# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WASHINGTON

|  | Case No. 1:14-CV-03112-VEB |
|---|---|
| AMBER DURNIL, for MICHAEL DURNIL, deceased,<br><br>Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | DECISION AND ORDER |

# I. INTRODUCTION

In July of 2011, Michael Durnil ("Claimant") applied for Disability Insurance Benefits ("DIB").  Mr. Durnil passed away in December of 2011.  Amber Durnil

("Plaintiff") pursued the application on Claimant's behalf.  The Commissioner of Social Security denied the application.

Plaintiff, represented by D. James Tree, Esq., commenced this action seeking judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).  The parties consented to the jurisdiction of a United States Magistrate Judge. (Docket No. 8).

On January 30, 2015, the Honorable Rosanna Malouf Peterson, Chief United States District Judge, referred this case to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 14).

## II. BACKGROUND

The procedural history may be summarized as follows:

Claimant applied for DIB on July 22, 2011. (T at 160).[1]  The application was denied initially and on reconsideration.  Claimant requested a hearing before an Administrative Law Judge ("ALJ"). Claimant died on December 29, 2011, and Plaintiff (his widow) was substituted as a party on February 28, 2012. (T at 126). On January 7, 2013, a hearing was held before ALJ M.J. Adams. (T at 36).  Plaintiff

---

[1] Citations to ("T") refer to the administrative record at Docket No. 11.

DECISION AND ORDER – DURNIL v COLVIN 14-CV-03112-VEB

appeared with an attorney and testified. (T at 37-51). The ALJ also received testimony from Olof Elofson, a vocational expert (T at 52-57).

On March 14, 2013, ALJ Adams issued a written decision denying the application for benefits.    (T at 16-30).    The ALJ's decision became the Commissioner's final decision June 12, 2014, when the Appeals Council denied Plaintiff's request for review. (T at 1-6).

On August 12, 2014, Plaintiff, acting by and through her counsel, timely commenced this action by filing a Complaint in the United States District Court for the Eastern District of Washington. (Docket No. 3). The Commissioner interposed an Answer on October 20, 2014. (Docket No. 10).

Plaintiff filed a motion for summary judgment on January 14, 2015. (Docket No. 13).  The Commissioner moved for summary judgment on March 25, 2015. (Docket No. 20).  Plaintiff filed a Reply on April 8, 2015. (Docket No. 22).

For the reasons set forth below, the Commissioner's motion is denied, Plaintiff's motion is granted, and this case is remanded for calculation of benefits.

DECISION AND ORDER – DURNIL v COLVIN 14-CV-03112-VEB

# III. DISCUSSION

## A.    Sequential Evaluation Process

The Social Security Act ("the Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if any impairments are of such severity that a plaintiff is not only unable to do previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404. 1520(a)(4)(i), 416.920(a)(4)(i). If not, the decision maker proceeds to step two, which determines whether plaintiff has a medially severe impairment or combination of impairments. 20 C.F.R. §§

DECISION AND ORDER – DURNIL v COLVIN 14-CV-03112-VEB

404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents plaintiff from performing work which was performed in the past. If a plaintiff is able to perform previous work that plaintiff is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, plaintiff's residual functional capacity (RFC) is considered. If plaintiff cannot perform past relevant work, the fifth and final step in the process determines whether plaintiff is able to perform other work in the national economy in view of plaintiff's residual functional capacity, age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once plaintiff establishes that a mental or physical impairment prevents the performance of previous work. The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" that plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## B.    Standard of Review

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold a Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983)(citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-02 (9th Cir. 1989).

Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebreeze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989)(quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the Commissioner, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

## C.    Commissioner's Decision

The ALJ found that Claimant did not engage in substantial gainful activity between March 31, 2006 (the alleged onset date) and December 29, 2011 (the date he died).  He met the insured status requirements of the Social Security Act through March 31, 2014. (T at 21). The ALJ determined that Claimant had the following severe impairments: cognitive disorder, depression, and drug abuse. (T at 21).

However, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled one of the impairments set forth in the Listings. (T at 22).

The ALJ found Claimant had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with the following nonexertional limitations: he could understand, remember and carry out simple instructions and make judgments on simple work-related decisions; he could respond appropriately to supervision and co-workers and deal with changes in a stable work environment (*i.e.* not subject to sudden or extreme change); he could have no more than occasional interaction with the general public. (T at 23).

The ALJ determined that Claimant could not perform his past relevant work as an automobile salesperson or quality control technician. (T at 24). However, considering Claimant's age (29 years old on the alleged onset date), education (high

school), work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Claimant could have performed. (T at 25).

As such, the ALJ concluded that Claimant had not been disabled under the Social Security Act from March 31, 2006 (the alleged onset date) through December 29, 2011 (the date of his death) and he was therefore not entitled to benefits. (Tr. 26). As noted above, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (Tr. 1-6).

**D.    Plaintiff's Arguments**

Plaintiff contends that the Commissioner's decision should be reversed. She offers four (4) principal arguments. First, she contends that the ALJ erred in failing to consider the episodic nature of Claimant's bipolar disorder in connection with the Step 3 analysis. Second, Plaintiff asserts that the ALJ improperly rejected the opinion of Dr. Schneider, an examining psychologist. Third, Plaintiff challenges the ALJ's assessment of her credibility. Fourth, she argues that the hypothetical questions presented to the vocational expert were flawed. This Court will address each argument in turn.

### 1.        Consideration of Bipolar Disorder/Step 3 Analysis

At step three of the sequential evaluation, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals an impairment listed in Appendix 1 of the Regulations (the "Listings"). *See* 20 C.F.R. §§ 404.1520(d), 416.920(d). If a claimant meets or equals a listed impairment, he or she is "conclusively presumed to be disabled and entitled to benefits." *Bowen v. City of New York*, 476 U.S. 467, 471, 106 S. Ct. 2022, 90 L. Ed. 2d 462 (1986); *see also Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993); *see also* 20 C.F.R. §§ 404.1525(a); 416.925(a).

An impairment meets a Listing if the impairment matches all of the medical criteria specified in the Listing. *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). An impairment or combination of impairments that satisfies, but not all of the criteria, does not qualify. *Sullivan*, 493 U.S. at 530; *Tackett*, 180 F.3d at 1099.

The claimant bears the burden of proving that she has an impairment or combination of impairments that meets or equals the criteria of a listed impairment. To satisfy this burden, the claimant must offer medical findings equal in severity to all requirements, which findings must be supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 416.926(b).

If a claimant's impairment does not satisfy the Listings criteria, he or she may still be disabled if the impairment "equals" a listed impairment. 20 C.F.R. § 404.1520(d). Equivalence will be found if the medical findings are (at a minimum) equal in severity and duration to the Listed impairment. *Marcia v. Sullivan*, 900 F.2d 172, 175 (9th Cir. 1990). To determine medical equivalence, the Commissioner compares the findings concerning the alleged impairment with the medical criteria of the listed impairment. 20 C.F.R. §§ 416.924(e), 416.926.

If a claimant has multiple impairments, the ALJ must determine "whether the combination of [the] impairments is medically equal to any listed impairment." 20 C.F.R. § 404.1526(a). The claimant's symptoms "must be considered in combination and must not be fragmentized in evaluating their effects." *Lester v. Chater*, 81 F.3d 821, 829 (9th Cir. 1996). "A finding of equivalence must be based on medical evidence only." *See Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001)(citing 20 C.F.R. § 1529(d)(3)).

"[I]n determining whether a claimant equals a listing under step three . . . the ALJ must explain adequately his evaluation of alternative tests and the combined effects of the impairments." *Marcia*, 900 F.2d at 176 (9th Cir. 1990). A remand may be required if ALJ fails adequately to consider a Listing that plausibly applies to the claimant's case. *See Lewis*, 236 F.3d at 514.

DECISION AND ORDER – DURNIL v COLVIN 14-CV-03112-VEB

Bipolar disorder is an "affective disorder" addressed in § 12.04 of the Listings.  Subsection "B" of Listings § 12.04 is satisfied if the claimant has at least two (2) of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.

The ALJ determined that Claimant did not satisfy § 12.04 of the Listings. In particular, the ALJ concluded that Claimant had only mild restriction with regard to activities of daily living, moderate difficulties with social functioning, moderate limitation in maintaining concentration, persistence, or pace, and no extended episodes of decompensation due to his mental health impairments. (T at 22).

This Court finds the ALJ's assessment is not supported by substantial evidence.  The Ninth Circuit has been clear that "it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). "Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Id.*; *see also Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011)("The very

nature of bipolar disorder is that people with the disease experience fluctuations in their symptoms, so any single notation that a patient is feeling better or has had a 'good day' does not imply that the condition has been treated.").

Here, the ALJ's decision demonstrates a failure to give adequate consideration to the wax/wane cycle of bipolar disorder, as required under applicable authority. For example, the ALJ found mild restriction in activities of daily living because Claimant "kept up" with his activities and "*generally* had no problems in maintaining personal hygiene." (T at 22)(emphasis added).   However, Plaintiff testified that, during depressive episodes, which occurred regularly, Claimant would remain in bed without showering. (T at 42).  Russell Anderson, a social worker, performed an evaluation in December of 2009 and assessed moderate limitation with regard to Claimant's ability to perform routine tasks and to care of himself (including personal hygiene and appearance). (T at 266).  Dr. L. Paul Schneider, an examining psychologist, described Claimant as "hypersomnolent," (also referred to as hyper-somnolence, this condition is characterized by persistent excessive sleepiness) going to bed around 10:30pm and arising at 11:30 in the morning. (T at 278).

The ALJ assessed moderate limitation with respect to social functioning, noting that Claimant attended church and enjoyed outdoor activities, such as fishing.

DECISION AND ORDER – DURNIL v COLVIN 14-CV-03112-VEB

(T at 22).  However, while Claimant attended church, he did not have any friends there. (T at 276).  Although he liked the outdoors, Claimant's outdoor activity was generally solitary. (T at 234).  Plaintiff testified that Claimant found social situations stressful. (T at 235).  Dr. Schneider described Claimant's "[s]ocial withdrawal" as "significant and long-term." (T at 278).   According to Dr. Schneider, Claimant reported a significant history of aggression, including "rages" and "a pattern of hitting people, breaking things, and throwing things out of anger." (T at 278).  His conflict resolution skills could be "fairly good, but [were] sometimes terrible." (T at 278).  Clinical testing indicated "difficulty with suspiciousness and guardedness…." (T at 281).  Mr. Anderson assessed marked limitation with regard to Claimant's ability to relate appropriate to co-workers and supervisors, especially during manic episodes, when Claimant displayed manic behavior, inflated self-esteem, and grandiose thinking. (T at 266).

With regard to concentration, persistence, and pace, the ALJ found that Claimant had moderate limitations because he enjoyed reading the Bible and "challenging Christian literature" and engaged in a balance of activities during the day. (T at 22).  However, Mr. Anderson reported that Claimant had severe low energy, poor concentration, and short-term memory problems. (T at 281).  Dr. Schneider noted mood swings and impulsive behavior. (T at 279).  The Social

Security's own intake interviewer observed significant attention difficulties. (T at 202). Moreover, Claimant's ability to attend to a preferred activity when not experiencing a manic or depressive episode is not particularly probative as to the question of whether he could consistently meet the demands of competitive, remunerative employment.

In sum, there is some evidence that Claimant could, during particular periods of time, maintain personal care and demonstrate adequate concentration, persistence, and pace when engaged in a preferred activity. However, there is also uncontroverted evidence that Claimant had marked limitations in these regards during manic and depressive periods, which occurred with some frequency. The ALJ's step 3 Listings analysis, which does not account for this wax/wane cycle and is based on Claimant's apparent abilities during periods of interlude, cannot be sustained.

### 2.     Dr. Schneider

In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating or examining physician's opinions are not contradicted, they

can be rejected only with clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

Dr. Paul Schneider, a psychologist, performed a psychological evaluation in July of 2011. Dr. Schneider described Claimant's work history as erratic, noting that he has had difficulty maintaining jobs for longer than six months. (T at 276). Dr. Schneider characterized this employment history as "pretty characteristic of a poorly controlled bipolar and chemical dependent individual." (T at 276). Claimant's personal care was "for the most part alright," although "very erratic." (T at 279). Claimant's clinical scales showed "difficulty with suspiciousness and guardedness" and indicated that Claimant was "probably … fairly thin-skinned." (T at 281). He "tend[ed] to struggle with anxiety and may have some unusual thinking at times." (T at 281). His "mania scale" was "an area of concern . . . ." (T at 281). "Ego strength" was "extremely low." His control of hostility was "low" and "he may at times be aggressive." (T at 281-82).

Dr. Schneider assigned a Global Assessment of Functioning ("GAF") score[2] "in the 50s" (T at 282), which he described as a "moderate" level of impairment. (T at 282). However, he indicated that this was "probably" Claimant's "highest level in the past year." (T at 282). He recommended prescription medication for Claimant's attention and concentration issues. (T at 283). Dr. Schneider "strongly recommend[ed] that [Claimant] apply for Social Security disability." (T at 283). According to Dr. Schneider, Claimant had "so many disabilities that it's just another catastrophe waiting to happen." (T at 283).

The ALJ gave Dr. Schneider's opinion "some weight." (T at 24). The ALJ noted that Dr. Schneider had described Claimant's problems as "lifelong issues" and that Claimant had performed substantial gainful activity during his life (including work as an automobile sales persona and quality control technician). (T at 24). Accordingly, because Claimant was able to work at times despite these "lifelong issues," the ALJ decided to discount Dr. Schneider's assessment.

This analysis is plainly insufficient. First, even the ALJ recognized that Claimant's condition had deteriorated to the point that he could no longer perform his past relevant work. (T at 24). Second, Dr. Schneider noted that the "normal

---

[2] "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998).

DECISION AND ORDER – DURNIL v COLVIN 14-CV-03112-VEB

course of these constellations of illnesses over time is a downward spiral . . . ." (T at 283).  Third, both Plaintiff and Dr. Schneider reported that while Claimant was able to work on occasion in the past, his ability to maintain a job was actually quite poor. (T at 45, 47, 276).  This is corroborated by Claimant's earnings record. (T at 170-77).  The fact that Claimant could maintain sporadic employment for periods of time prior to the alleged onset date is minimally probative with regard to the issue of his ability to perform basic work activities thereafter, particularly given Dr. Schneider's note regarding the downward trajectory of the illness and Plaintiff's testimony as to how the illness interfered with Claimant's efforts to work. Further, the ALJ's analysis was again impacted by the failure to account for the wax/wane cycle so tragically typical of bipolar disorder.

The ALJ's analysis of Dr. Schneider's assessment consistent of a single paragraph containing four (4) sentences.  The conclusory analysis did not account for any of the foregoing facts.  This Court has no hesitancy in finding that the ALJ's decision to discount Dr. Schneider's opinion cannot be sustained.

### 3.    Credibility

Plaintiff (Claimant's widow) testified that when Claimant was depressed he would remain in bed and fail to attend to his hygiene. (T at 42, 43, 49).  His manic periods would last about a week. (T at 43).  He tried to work, but had difficulty

maintaining employment due to arguments with supervisors. (T at 44). His manic periods caused difficulties with co-workers and supervisors and his depressive periods resulted in absenteeism. (T at 46). He had difficulties with focus and sitting still when having manic episodes, which occurred about one week a month. (T at 48).

The ALJ found that Plaintiff's testimony was inconsistent with Claimant's "actual activities and functioning" and were, thus, "not wholly credible." (T at 24). This analysis was insufficient. Plaintiff's testimony was consistent with the evidence, which indicated periods of productive activity interrupted by cycles of mania and depression. Plaintiff's testimony was consistent with the limitations described by Mr. Anderson, an examining social worker, and Dr. Schneider, an examining psychologist. The ALJ erred in discounting Plaintiff's testimony.

### 4.        Hypothetical Question

At step five of the sequential evaluation, the burden is on the Commissioner to show that (1) the claimant can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984). If a claimant cannot return to his previous job, the Commissioner must identify specific jobs existing in substantial numbers in the national economy that the claimant can perform. See

*Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir.1995). The Commissioner may carry this burden by "eliciting the testimony of a vocational expert in response to a hypothetical that sets out all the limitations and restrictions of the claimant." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.1995). The ALJ's depiction of the claimant's disability must be accurate, detailed, and supported by the medical record. *Gamer v. Secretary of Health and Human Servs.*, 815 F.2d 1275, 1279 (9th Cir.1987). "If the assumptions in the hypothetical are not supported by the record, the opinion of the vocational expert that claimant has a residual working capacity has no evidentiary value." *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984).

Here, the ALJ's step five analysis relied on the testimony of Olof Elofson, a vocational expert. (T at 25). However, the hypothetical questions presented to Mr. Elofson assumed a claimant able to respond appropriately to supervision and co-workers in a stable work environment and maintain a consistent work schedule. (T at 54). As outlined above, the evidence demonstrated the Claimant could not consistently demonstrate these abilities. Accordingly, the opinion of the vocational expert has no evidentiary value.

## C.  Remand

In a case where the ALJ's determination is not supported by substantial evidence or is tainted by legal error, the court may remand for additional

proceedings or an immediate award of benefits. Remand for additional proceedings is proper where (1) outstanding issues must be resolved, and (2) it is not clear from the record before the court that a claimant is disabled. *See Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

In contrast, an award of benefits may be directed where the record has been fully developed and where further administrative proceedings would serve no useful purpose. *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Courts have remanded for an award of benefits where (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id*. (citing *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir.1989); *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989); *Varney v. Sec'y of Health & Human Servs*., 859 F.2d 1396, 1401 (9th Cir.1988)).

Here, this Court finds that a remand for calculation of benefits is the appropriate remedy. Plaintiff's credibility was improperly discounted. An examining psychologist and social worker both assessed disabling limitations, consistent with Plaintiff's lay testimony. The ALJ committed clear legal error by failing to account for the wax/wane cycle of bipolar disorder and by discounting the

DECISION AND ORDER – DURNIL v COLVIN 14-CV-03112-VEB

opinion of Dr. Schneider. There are no outstanding issues that must be resolved before a determination of disability can be made.

# IV. ORDERS

IT IS THEREFORE ORDERED that:

Plaintiff's motion for summary judgment, Docket No. 13, is GRANTED.

The Commissioner's motion for summary judgment, Docket No. 20, is DENIED.

This case is remanded for calculation of benefits,

The District Court Executive is directed to file this Order, provide copies to counsel, enter judgment in favor of Plaintiff, and close this case.

DATED this 1st day of July, 2015.

/s/Victor E. Bianchini
VICTOR E. BIANCHINI
UNITED STATES MAGISTRATE JUDGE

DECISION AND ORDER – DURNIL v COLVIN 14-CV-03112-VEB